# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:25-CV-00237-KDB

|  |  |
|---|---|
| **TONI MICHELLE HENDERSON,** | |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM AND ORDER** |
| **FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Plaintiff Toni Henderson's appeal of an unfavorable administrative decision denying her application for disability insurance benefits and supplemental security income under the Social Security Act. Doc. No. 7 at 1. Having reviewed and considered the parties' briefs, the administrative record, and applicable authority, and for the reasons set forth below, the Court finds this matter should be remanded to allow the ALJ to reconsider his view of the persuasiveness of the medical opinion of Plaintiff's primary care physician as discussed below. Accordingly, the Court will **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

## I. PROCEDURAL BACKGROUND

On February 25, 2022, Plaintiff Toni Henderson applied for disability insurance benefits under Title II of the Social Security Act, alleging that she had been disabled since December 26, 2020. Doc. No. 4 (Administrative Record ("AR")) at 18. Henderson's claim was denied initially and upon reconsideration. *Id.* Henderson then requested a hearing before an Administrative Law Judge ("ALJ"), where she was represented by counsel. *Id.* After conducting the hearing, ALJ John

1

Pottinger denied Henderson's application in a decision dated January 3, 2025. *Id.* at 30. The Appeals Council denied Henderson's request for review; thus, the ALJ's determination stands as the final decision of the Commissioner. *See id.* at 1. Henderson now timely seeks judicial review under 42 U.S.C. § 405(g).

## II.    THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Henderson was disabled under the law during the relevant period.[1] At step one, the ALJ found that Henderson was not currently engaged in substantial gainful activity and had not done so from the alleged onset date of December 26, 2020, through the date of her decision. AR at 21 (citing 20 C.F.R. §§ 404.1571, et seq.). At step two the ALJ determined that Henderson had the following severe impairments: "fibromyalgia, depression, autism spectrum, attention deficit hyperactivity disorder (ADHD), anxiety, neuropathy, cardiac dysfunction, and degenerative disk disease. (20 CFR 404.1520(c) and 416.920(c))." *Id.*. At step three, the ALJ found that none of Henderson's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.*

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite her limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Before proceeding to step four, the ALJ determined that Henderson had the following residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can never climb ladders, ropes, and scaffolds; can occasionally balance; frequently stoop, kneel, crouch, and crawl; and should not be exposed to workplace hazards such as unprotected heights or moving mechanical parts. Mentally, she is able to understand, remember and carry out simple instructions and to maintain concentration, persistence and pace on those types of tasks for 2-hour periods over the course of an 8-hour workday with occasional changes in a routine work setting. She can tolerate frequent interaction with the general public, coworkers, and supervisors.

*Id.* at 23.

At step four, the ALJ found that Henderson did not have past relevant work due to the accommodation Henderson received of being allowed to sit on a stool, thus performing the position at a sedentary level. *Id.* at 29. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Henderson could perform based on her age, education, work experience, and RFC. *Id.* These jobs included production worker and hand packager. *Id.* at 30. Thus, the ALJ found that Henderson was not disabled under the Social Security Act from December 26, 2020, through January 3, 2025, the date of the ALJ's decision. *Id.*

### III.   LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the

3

applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner *de novo, Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

---

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

4

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*.; *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV. DISCUSSION

In her appeal to this Court, Henderson raises a single complaint, arguing that the ALJ's decision must be vacated because he did not properly consider the medical opinions of Dr. Lisa LaVallee in his analysis.[3] Dr. LaVallee has been Plaintiff's primary care physician for more than 20 years, seeing her approximately every two to three months. AR at 1422. In a June 2023 letter

---

[3] An ALJ, in determining what weight to give a medical opinion, should consider five factors, which include "the supportability of the opinion [and] the opinion's consistency with the record as a whole." *Vera J. v. Saul*, No. CV GLS 19-3110, 2021 WL 399578, at *3 (D. Md. Feb. 3, 2021). The "supportability" of a provider's opinion is the degree that objective medical evidence and explanations support the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(c)(1). The "consistency" of a medical opinion is the degree that the opinion is aligned with the record as a whole, including both medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

and May 2024 "Mental Capacity Questionnaire," Dr. LaVallee opined that Plaintiff was disabled, has "profound fatigue…to the point of needing a wheel chair," and "cannot work 8 hours because of her diagnoses" (which include "chronic fatigue syndrome, major depression, fibromyalgia," and other conditions). *Id*. at 959, 1428. The ALJ found the letter "of minimal persuasiveness" and did not credit the doctor's findings with respect to Plaintiff's ability to work full-time. *Id*. at 28. Plaintiff argues these conclusions are erroneous and thus seeks a remand. Doc. No. 7 at 1. The Court agrees that a remand is appropriate.

### A. Treating Source Statement

The ALJ analyzed Dr. LaVallee's "treating source statement" as follows:

> The treating source statement also provided by Dr. LaValle is of minimal persuasiveness. (7F). Although the letter is from a treating source, it only compares the functional impact of chronic fatigue syndrome on the claimant's adult life compared to her childhood, and without assessing the claimant's functional limitations. Further, the letter is not fully consistent with the record, as the provider's stated opinion conflicts with objective medical evidence showing only mild to moderate abnormalities, several benign exam reports, as well as the provider's own documentation in records that the claimant does not meet the criteria for a motorized chair.

AR at 28.

In *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 98-102 (4th Cir. 2020), the Fourth Circuit established strict standards for the nature of evidence that may be considered when evaluating the complaints of a social security claimant with fibromyalgia, including pain and fatigue. Specifically, an ALJ may not use, even as one of a number of factors, the absence of objective medical evidence to discount subjective symptoms ("ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other

disease that does not produce such evidence.")[4] *Id.* at 97; see *Hultz v. Bisignano*, 162 F.4th 111, 121 (4th Cir. 2025). Here, the ALJ's decision expressly discounts Dr. LaVallee's opinion based on the "objective medical evidence" of limited abnormalities as well as "benign exam reports." This runs afoul of *Arakas* and requires remand.

Further, while the Court may not (and does not here) reweigh the evidence, an ALJ may not "cherry-pick" only supporting evidence, ignoring other contrary evidence. *See Arakas,* 983 F.3d at 98 (an ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."). For example, in stating that the treating source statement only generally compares the Plaintiff's childhood and adult life and does not assess "the claimant's functional limitations," the ALJ's decision ignores numerous other parts of the letter. These include the specific listing of Plaintiff's diagnoses, as well as statements that Plaintiff has "struggled to have accommodations that would allow her to continue working," "has profound fatigue …to the point of needing a wheel chair[5] which is worse as the day progresses with increased activity," "reports significant cognitive impairment particularly when the fatigue is severe," and "has shown no

---

[4] Some courts have held that "Chronic Fatigue Syndrome" ("CFS"), which is the focus of Dr. LaVallee's opinions, must also be held to the *Arakas* standard based on the fact that its "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." *See Stephanie C. v. Comm'r of Soc. Sec.*, No. CV 4:25-CV-00001, 2026 WL 781195, at *7 (W.D. Va. Mar. 19, 2026); *Lisa C. v. Saul*, No. GLS 20-01179, 2021 WL 3040019, *2–3 (D. Md. July 16, 2021). However, because Plaintiff's diagnoses include fibromyalgia, the Court can comfortably apply *Arakas* and need not decide here the extent to which *Arakas* should be extended to CFS.

[5] In the ALJ's discussion of Dr. LaVallee's treating source statement, he stated that Dr. LaVallee found that the Plaintiff had not met the criteria for a wheel-chair. AR at 28, 539 ("We met today to discuss that she does not me[et the] criteria for [a] motor[ized] wheelchair…"). However, by considering all of Dr. LaVallee's opinions in context, including the opinion in her treating source statement that "She has profound fatigue…to the point of needing a wheel chair," AR at 959, it appears that the criteria Dr. LaVallee mentioned may relate to insurance coverage rather than any of Plaintiff's medical conditions.

improvement" in her "inappropriate sinus tachycardia" with standard and alternative treatments. On remand, the ALJ must fully consider evidence favoring Plaintiff and, based on specific citations to the record,[6] explain why he has reached a different conclusion.

### B. Mental Functioning Assessment

The ALJ also gives no weight to Dr. LaVallee's most important conclusion in her Mental Capacity Questionnaire ("MCQ") that Plaintiff cannot work an 8-hour day. In reviewing Dr. Lavallee's opinion in the context of the claimant's mental functioning assessment, the ALJ states, in part:

> The provider's opinion is somewhat supported by the treatment history between provider and claimant, but the provider does not indicate specific objective evidence to support the more restrictive findings in the ability to work an 8-hour day and understanding social cues. For example, the provider merely checked boxes on a questionnaire and inserted the word "autism" with no further explanation.

AR at 28.

This analysis similarly requires remand. Beyond the inappropriateness of the ALJ's requirement of "specific objective evidence" to support the opinion as discussed above, the ALJ has improperly discounted the opinion based only on its format as a questionnaire with "checked-boxes." It is true that, in some circumstances, an ALJ may give a "form opinion" less weight than a narrative opinion. *See Schaller v. Colvin,* No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings."). However, that judgment must

---

[6] The Court notes that few of the ALJ's references to the record contain "pinpoint" cites. Because some cited exhibits within the Record run for hundreds of pages and aggregate material from different medical providers, citing to page numbers in addition to the exhibits is necessary for the Court to fully appreciate the ALJ's reasoning and evidence.

always be based on the substance and depth of the medical opinion, not the form on which it appears. *See Thomas v. Berryhill*, No. 4.16-CV-15-D, 2017 WL 1047253, at *8 (E.D.N.C. Feb. 15, 2017) ("[The medical provider's] review is contained on a form with check boxes, but [he] also provided additional notations regarding Thomas's treatment and status. Moreover, check-boxes forms are regularly used by both providers and consultants in the disability determination process. Thus, the format alone is not a reasonable basis to dismiss [the provider's] assessment.").

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527. There is no question that the MCQ completed by Dr. LaVallee is a "medical opinion" that merited more thoughtful consideration. It is an eight page document with both open "fill in the blank" questions and "check the box" responses (some "yes" / "no" questions and a series of questions with a potential spectrum of answers including "none," "mild," "moderate," "marked," and "extreme"). AR at 1422-28. In the "narrative" section, Dr. LaVallee described Plaintiff's current diagnoses, prognosis, the "physical impairments or medical condition" that causes the patient's mental health limitations, and the specifics of Plaintiff's treatment and response. *Id*. at 1422. Then, numerous patient symptoms were noted (by checking the ones that applied), along with some explanatory notations. *Id*. at 1423-24. Similarly, the final list of "checked questions" (with the spectrum of responses) was completed, along with several explanatory side notes. *Id*. at 1425-27.

Therefore, rather than merely a conclusory "form," the MCQ, as completed by Dr. LaVallee, is a detailed medical opinion that was deserving of more consideration than the ALJ

9

allowed. *Compare Rivera v. Saul*, No. 5:19-CV-390-D, 2020 WL 4723170, at *5 (E.D.N.C. June 25, 2020), report and recommendation adopted, No. 5:19-CV-390-D, 2020 WL 4718382 (E.D.N.C. Aug. 12, 2020) (requiring the ALJ to further evaluate a medical opinion reflected in a completed form that included diagnoses, symptoms, and prose); with *Court v. Saul*, No. 4:18-CV-201-RJ, 2019 WL 4415145, at *5 (E.D.N.C. Sept. 16, 2019) (holding that ALJ adequately explained that he discounted medical opinion because it was issued on a check-box form with no explanation or support). On remand, the ALJ should reconsider the MCQ based on its substance without a thumb on the scale based only on the format of the opinion.

## V.   ORDER

**NOW THEREFORE IT IS ORDERED** that the Commissioner's decision is **REVERSED**. This matter is **REMANDED** for a new hearing pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 4, 2026

Kenneth D. Bell
United States District Judge